UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/17/15
```

------------------------------------------------- X

JOSHUA CONKLIN,

          Petitioner,

  - against -

SUPERINTENDENT WILLIAM F.
HULIHAN, Mid-State Correctional Facility,

        Respondent.

------------------------------------------------- X

<u>OPINION AND ORDER</u>

**11-cv-4635 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION

Petitioner Joshua Conklin brings this pro se habeas corpus petition pursuant to section 2254 of Title 28 of the United States Code challenging his state court conviction following a jury trial in New York County Court, Orange County.[1]  After being convicted of burglary in the second degree[2] and grand

---

[1] *See* Petition for a Writ of Habeas Corpus at 1; Respondent's Memorandum of Law at 1.

[2] *See* N.Y. Penal Law § 140.25[2].

-1-

larceny in the fourth degree,[3] Conklin was sentenced to concurrent terms of eight years for the burglary conviction and two to four years for the grand larceny conviction, as well as five years post-release supervision.[4]

On June 13, 2011, Conklin filed the instant Petition, challenging his conviction on the following grounds: (1) juror misconduct; (2) ineffective assistance of counsel; (3) the conviction was based on insufficient evidence and/or was against the weight of the evidence; and (4) his incriminating statements were not voluntary.  For the following reasons, the Petition is denied.

## II.   BACKGROUND

### A.   The Offending Conduct and Arrest

The crimes underlying Conklin's conviction occurred on September 13, 2007.[5]  At approximately 12:30 p.m., Shaun Parker noticed a person riding a bicycle through a parking lot next to the home of his parents, Don and Esther Parker, who were out at the time.[6]  Parker walked around the house and saw the same bicycle laying in the backyard.[7]  Parker noticed that the back door was open,

---

[3]   *See id.* § 155.30[4].

[4]   *See* 7/9/08 Transcript of Sentencing Proceeding at 11.

[5]   *See* Jury Trial Transcript at 275–290.

[6]   *See id.* at 299–300, 304.

[7]   *See id.* at 306–308.

-2-

called the police, and reported that someone was in the house.[8]  Conklin then came out of the house through the open back door.[9]  Parker yelled at him, asking what he was doing in the house, and Conklin yelled back that he was looking for Mr. Parker.[10]  Parker then told Conklin that the police were on their way.[11]  Conklin ran away, and Parker chased him, while calling the police on his cell phone.[12]

Officer Kelly Decker arrived, and Parker told him that Conklin was behind the house located on Seward Avenue next to Church Street Park.[13]  Decker drove to the park, walked to the entrance, and saw Parker about 300 to 400 feet away at the other end of the park.[14]  Decker saw Parker jump over the fence and start to run.[15]  Decker chased him and took him into custody.[16]  Detective Worden,

---

[8]     *See id.* at 309, 311.

[9]     *See id.* at 312.

[10]    *See id.*

[11]    *See id.* at 313.

[12]    *See id.* at 313–314.

[13]    *See id.* at 278, 314.

[14]    *See id.* at 278.

[15]    *See id.* at 278–279.

[16]    *See id.* at 284.

several other officers, and Parker all arrived at that time.[17]  Conklin looked at

Worden and said that all he did was go into Mr. Parker's house and look around.[18]

Worden told Decker to take Conklin to the station and that no one was to talk to

him until Worden returned.[19]  Worden went back to the home and saw Don

Parker's wallet on top of a dresser.[20]  Another officer found Don Parker's credit

card on the ground near the fence that Conklin had climbed over, and reported it to

Worden.[21]

   While driving to the station, Conklin asked Decker what was going

on.[22]  Decker stated that Conklin would have to talk to somebody, and Conklin

replied that Mr. Parker had told him to come in.[23]  Decker stated that he was not

asking any questions and that Conklin would have to speak with the detective at

the station.[24]

---

[17]  *See id.*

[18]  *See id.* at 332.

[19]  *See id.*

[20]  *See id.* at 333.

[21]  *See id.* at 327–328.

[22]  *See id.* at 285.

[23]  *See id.*

[24]  *See id.* at 285–286.

At the police station, Worden advised Conklin of his *Miranda* rights, which Worden read from a preprinted card.[25]  Worden read each right separately, asked Conklin if he understood, and Conklin nodded his head up and down to indicate that he understood.[26]  Conklin then agreed to speak with Worden.[27] Conklin admitted that he had gone into the home and taken a credit card, and signed a written statement to that effect.[28]

Later that day, Conklin was brought to the medical unit for an urgent medical assessment.[29]  Conklin told Gina Barbusci, a registered nurse, that he had taken three OxyContin, 80 milligrams each, and then another three at around noon that day.[30]  Barbusci examined Conklin and found that his pupils were constricted and did not react to light, that he appeared pale, and that he had an altered mental status.[31]  Based on this, Barbusci sent Conklin to the emergency room for further

---

[25]    *See id.* at 336.

[26]    *See id.* at 337–338.

[27]    *See id.* at 340.

[28]    *See id.* at 340–341.

[29]    *See id.* at 394.

[30]    *See id.* at 398.

[31]    *See id.* at 399–400.

evaluation.[32]  At the emergency room, Patricia Moran, a registered nurse, examined Conklin and found him alert and without slurred speech.[33]  Conklin was discharged less than two hours later.[34]

## B.   Procedural History

On June 5, 2008, Conklin was convicted by a jury of second degree burglary and fourth degree grand larceny.[35]  Conklin appealed his conviction to the Appellate Division, Second Department, raising the following claims: (1) the trial court should have granted the motion to suppress Conklin's statements; (2) the trial court should have granted Conklin's request for assignment of new counsel; and (3) the burglary conviction was based on insufficient evidence and/or was against the weight of the evidence.[36]

On March 2, 2010, the Appellate Division unanimously affirmed Conklin's conviction.[37]  Conklin then submitted a letter seeking leave to appeal to

---

[32]     *See id.* at 403.

[33]     *See id.* at 450.

[34]     *See id.* at 451.

[35]     *See* Affirmation in Opposition to a Petition for a Writ of Habeas Corpus ¶ 3.

[36]     *See* Appellant's Brief, Ex. 6 to Respondent's Record of Exhibits.

[37]     *See People v. Conklin*, 897 N.Y.S.2d 149 (2d Dep't 2010)*.*

the New York Court of Appeals, raising the same issues, which was denied on June 15, 2010.[38]  Conklin then filed a motion under New York Criminal Procedure Law section 440.10, seeking to vacate judgment on the grounds of juror misconduct and ineffective assistance of counsel.[39]  On April 27, 2011, the County Court denied the motion, because the issues could have been raised on a direct appeal.

## III.   LEGAL STANDARDS

### A.   Deferential Standard for Federal Habeas Review

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA").  The AEDPA provides that a federal court may not grant a writ of habeas corpus to a prisoner in custody[40] pursuant to the judgment of a state court with respect to any claim, unless the state court's adjudication on the merits of the claim: "(1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[38]   *See* Certificate Denying Leave, Ex. 10 to Respondent's Record of Exhibits.

[39]   *See* Motion to Vacate Judgment, Ex. 11 to Respondent's Record of Exhibits.

[40]   The meaning of "in custody" is not limited to situations where an individual is being held in prison or jail.  A person is also considered "in custody" where, as here, the person is on probation or parole.  *See Jones v. Cunningham*, 371 U.S. 236, 239–41 (1963).

Supreme Court of the United States;"[41] or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[42]

A state-court decision is contrary to clearly established federal law, as determined by the Supreme Court, in the following two instances:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.[43]

With regard to the "unreasonable application" prong, the Supreme Court has stated:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle

---

[41]   28 U.S.C. § 2254(d)(1).

[42]   *Id.* § 2254(d)(2).

[43]   *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

to a new context where it should apply.[44]

In order for a federal court to find a state court's application of Supreme Court precedent to be unreasonable, the state court's decision must have been more than incorrect or erroneous.  Rather, "[t]he state court's application of clearly established law must be *objectively unreasonable*."[45]  This standard "'falls somewhere between merely erroneous and unreasonable to all reasonable jurists.'"[46]  While the test requires "'[s]ome increment of incorrectness beyond error, . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"[47] Furthermore, section 2254(d) applies to a defendant's habeas petition even where the state court order does not include an explanation of its reasoning.[48]

Where  a  state  court's  decision  is  unaccompanied  by  an

---

[44]    *Id.* at 407.

[45]    *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (emphasis added). *Accord Renico v. Lett*, 559 U.S. 766, 773 (2010) (stating that "[t]his distinction creates 'a substantially higher threshold' for obtaining relief than *de novo* review") (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)); *Williams*, 529 U.S. at 409; *Harris v. Kuhlman*, 346 F.3d 330, 344 (2d Cir. 2003).

[46]    *Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)).

[47]    *Francis v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (quoting *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 889 (3d Cir. 1999)).

[48]    *See Harrington v. Richter*, 562 U.S. 86, 98 (2011).

explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for [section] 2254(d) applies when a "claim," not a component of one, has been adjudicated.[49]

Section 2254(d) also applies where a state court does not explicitly state in its opinion that it is adjudicating a claim on the merits.[50] "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[51]

The deferential standard of review created by the AEDPA also extends to state-court factual determinations. Such determinations are presumed to be correct, and the petitioner must rebut them by clear and convincing evidence.[52]

## B.    Exhaustion Requirement

---

[49]    *Id.* (citing, *inter alia*, *Sellan v. Kuhlman*, 261 F.3d 303, 311–12 (2d Cir. 2001) ("[W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent." (quotation marks and citation omitted))).

[50]    *See id.*

[51]    *Id.* at 99.

[52]    *See* 28 U.S.C. § 2254(e)(1).

Section 2254 provides that a habeas petition by a state prisoner may not be granted unless "the applicant has exhausted the remedies available in the courts of the State."[53]   In order to satisfy this exhaustion requirement, a prisoner must have "'fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts,'"[54] either in the form of "explicit constitutional arguments" or simply by "alleging facts that fall 'well within the mainstream of constitutional litigation.'"[55]   Fair presentation of a claim, for exhaustion purposes, includes petitioning for discretionary review in the state's highest appellate court.[56]   However, "a federal habeas court need not require that a claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."[57]   In such cases, a district court may deem the

---

[53]     *Id.* § 2254(b)(1)(A).

[54]     *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)).

[55]     *Levine v. Commissioner of Corr. Servs.*, 44 F.3d 121, 124 (2d Cir. 1995) (quoting *Dave v. Attorney Gen.*, 969 F.2d 186, 192 (2d Cir. 1982) (en banc)).

[56]     *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999); *see also Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (stating that in New York, exhaustion requires that a "criminal defendant . . . first appeal his or her conviction to the Appellate Division, and then . . . seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal").

[57]     *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997).

-11-

claims to be exhausted.[58]

When a habeas petition under the AEDPA contains both exhausted and unexhausted claims, a district court "can offer the petitioner 'the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims.'"[59]  A district court may also deny a petition on the merits, even if it contains unexhausted claims.[60]  The Supreme Court has noted that "plainly meritless" claims should be denied on the merits rather than dismissed for failure to exhaust.[61]  Finally, in limited circumstances, a district court may stay a mixed petition and hold it in abeyance until it has been properly presented to the state courts.[62]

### C.    Procedural Bar

Under the adequate and independent state ground doctrine, if the last state court to render judgment clearly and expressly states that its judgment rests

---

[58]      *See id.*

[59]      *McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002) (quoting *Rose v. Lundy*, 455 U.S. 509, 510 (1982)).

[60]      *See* 28 U.S.C. § 2254(b)(2).

[61]      *Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that in light of the discretion to deny unexhausted claims on the merits, the decision to stay a habeas petition to allow a petitioner to exhaust plainly meritless claims would be an abuse of discretion).

[62]      *See id.* at 277–78.

on a state procedural bar, federal habeas review is precluded.[63]  Even if the state

court alternatively rules on the merits of the federal claim, federal habeas review is

precluded if an adequate and independent state ground would bar the claim in state

court.[64]  Federal habeas review of procedurally barred claims is foreclosed unless

the prisoner can demonstrate either (1) "'cause for the default and actual

prejudice;'" or (2) "'that failure to consider the claims will result in a fundamental

miscarriage of justice.'"[65]  To show cause for a default, a prisoner must put forth

some objective factor, external to the defense, explaining why the claim was not

previously raised.[66]  The Supreme Court has provided little guidance as to what

constitutes "prejudice," but it can be inferred that prejudice is shown when the

claim, if proven, would bear on the petitioner's guilt or punishment.[67]  The

---

[63]     *See Jones v. Duncan*, 162 F. Supp. 2d 204, 210 (S.D.N.Y. 2001) (citing *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997)).

[64]     *See, e.g.*, *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Garcia v. Lewis*, 188 F.3d 71, 72–82 (2d Cir. 1999); *Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir. 1996).

[65]     *Glenn*, 98 F.3d at 724 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  *Accord Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Epps v. Commissioner of Corr. Servs.*, 13 F.3d 615, 617–18 (2d Cir. 1994).

[66]     *See Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999).

[67]     *See Banks v. Dretke*, 540 U.S. 668, 671 (2004) (stating that "prejudice within the compass of the 'cause and prejudice' requirement exists when suppressed evidence is 'material' for *Brady* purposes" (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999))).

fundamental miscarriage of justice exception to the procedural bar rule is available only upon a showing of actual innocence.[68]  Finally, a habeas petitioner may not avoid the exhaustion requirement by waiting until federal habeas review to bring claims properly raised in state court.  If such claims would be procedurally barred on the state level, they are deemed exhausted and procedurally defaulted for the purposes of federal habeas review.[69]

### D.    Sufficiency of the Evidence

The Due Process Clause of the Fourteenth Amendment prohibits conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged."[70]  A habeas corpus petitioner is therefore entitled to relief when the federal court determines that "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."[71]  The evidence must be viewed

---

[68]     *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]e think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

[69]     *See Coleman*, 501 U.S. at 735 n.1; *see also Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006).

[70]     *In re Winship*, 397 U.S. 358, 364 (1970).

[71]     *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)*.*

in the light most favorable to the prosecution.[72]

       In New York, a person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with the intent to commit a crime therein and when the building is a dwelling.[73]

## IV.    DISCUSSION

### A.    Juror Misconduct and Ineffective Assistance of Counsel (Grounds 1 and 2)

       Conklin alleges that his Sixth Amendment rights were violated by juror misconduct — because he alleges a member of the jury was friends with the victim — and by ineffective assistance of counsel. *First*, Conklin argues that one member of the jury stated that she and her family were friends with the victim and did business with him, but does not identify the particular juror. *Second*, Conklin contends in his petition that his counsel was constitutionally deficient because he did not allow a subpoenaed witness to testify, and instead told the witness outside of the courtroom that his testimony was not needed.[74]

---

[72]    *See id.* at 319.

[73]    N.Y. Penal Law § 140.25[2].

[74]    Conklin also argues in his reply that the trial court should have granted his request for assignment of new counsel. "It is well settled . . . that a party may not raise an argument for the first time in a reply brief." *Concepcion v. United States*, 181 F. Supp. 2d 206, 231 (E.D.N.Y. 2002). Moreover, this argument has no merit, as a review of the record indicates that the Appellate

Conklin has failed to satisfy the exhaustion requirement for these claims.  Though Conklin raised them in a post-judgment motion under section 440.10, he did not seek leave to appeal after his motion was denied.[75]  Therefore, the claims are unexhausted.[76]  However, both claims may be deemed exhausted, as there is no further state remedy.  The time to appeal the denial of his motion has run.  Even if he could seek leave to appeal, it is clear that an appellate court would hold that the claims are procedurally barred.  Section 440.10(2)(c) "mandates that the state court deny any 440.10 motion where the defendant unjustifiably failed to argue such constitutional violation on direct appeal despite a sufficient record."[77]  Conklin is therefore deemed to have exhausted these claims.

For the same reasons, the claims are procedurally barred.  As discussed above, "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," and therefore the claims are procedurally defaulted.[78]

---

Division correctly determined that Conklin failed to demonstrate good cause for substitution of counsel.

[75]     *See* N.Y. Crim. Proc. Law § 450.15.

[76]     *See O'Sullivan*, 526 U.S. at 847–48.

[77]     *Reyes*, 118 F.3d at 139.

[78]     *Coleman*, 501 U.S. at 735.

Conklin has shown no cause for his failure to raise these claims on direct appeal, nor is there a fundamental miscarriage of justice.

Conklin's claims regarding juror misconduct and ineffective assistance of counsel are therefore denied.

**B.      Sufficiency of the Evidence (Ground 3)**

Conklin argues his burglary conviction was based on insufficient evidence and/or against the weight of the evidence.  Specifically, Conklin contends that the evidence was insufficient to establish that he entered the residence unlawfully with the intent to commit a crime therein.  The Appellate Division found that there was a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the fact finder on the basis of the evidence of trial."[79]  Reviewing the evidence under the deferential standard of review, I conclude that the Appellate Division's decision is not contrary to or an unreasonable application of clearly established federal law.

The jury heard evidence that Conklin entered the Parker residence when no one was home, and that Conklin had spoken with Don Parker earlier that day and knew Parker had left his wallet at home.  The jury also heard evidence that Conklin ran from the scene after Shaun Parker told him that he had called the

---

[79]      *Conklin*, 897 N.Y.S.2d at 150 (citations omitted).

-17-

police.  Based on this evidence, a rational fact finder could infer that Conklin

entered the house unlawfully with the intent to commit a crime.  Because there is

sufficient evidence in the record to allow a rational juror to find that Conklin

committed each element of the crime beyond a reasonable doubt, the state court's

decision is not contrary to or an unreasonable application of clearly established

law.

> Conklin's alternative claim that the conviction is against the weight of

the evidence is not properly before this Court.  A federal habeas court cannot

address "weight of the evidence" claims because "a challenge to a verdict based on

the weight of the evidence is different from one based on the sufficiency of the

evidence.  Specifically, the 'weight of the evidence' argument is a pure state law

claim . . . whereas a legal sufficiency claim is based on federal due process

principles."[80]

> Conklin's claims regarding the sufficiency of the evidence are

therefore denied.

### D.      Voluntariness of Conklin's Statements

> Conklin makes two separate arguments relating to the voluntariness of

his statements.  *First*, he argues that the statements he made at the scene and in the

---

[80]     *Douglas v. Portuondo*, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002).

patrol car should have been suppressed because he had not been given *Miranda* warnings. *Second*, he contends that the statements he made after receiving *Miranda* warnings and waiving his rights should have been suppressed because his waiver was not voluntary.

The trial court determined in a pre-trial hearing that Conklin's initial statements were spontaneous. Detective Worden testified that as he approached Conklin, Conklin stated "I didn't do anything but walk around Mr. Parker's house." This statement was not in response to any question from Worden. Similarly, in the patrol car, Conklin stated, "I only went into his house. Mr. Parker told me to come in." Officer Decker, who was driving the patrol car, testified that he did not ask Conklin any questions — in fact, he informed Conklin that he was not asking him any questions. Based on this evidence, the trial court found that, although Conklin was in custody at the time, the statements were not made as a response to any interrogation, and therefore *Miranda* warnings were not required.

I find no error in this conclusion. *Miranda* warnings are required only when a person in custody is subjected to "express questioning or its functional equivalent."[81] The trial court found, based on his evaluation of the witnesses' testimony, that Conklin's statements were spontaneous, and not in response to any

---

[81]     *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980).

interrogation.  As such, *Miranda* warnings were not necessary, and the trial court did not err in admitting the statements.

The trial court next concluded that Conklin's statements made in the police station after receiving *Miranda* warnings and waiving his right against self-incrimination and his right to a lawyer were voluntary and admissible.  Conklin argued that he was under the influence of drugs — specifically OxyContin, a powerful narcotic — and therefore was in such an altered mental state that he could not knowingly and intelligently waive his rights.  The Appellate Division affirmed the trial court's ruling.

"To establish a valid waiver [of these rights], the State must show that the waiver was knowing, intelligent, and voluntary . . . ."[82]  In reviewing a determination of voluntariness, a habeas court must distinguish between questions of law and questions of fact.  As the Seventh Circuit has explained:

> The ultimate issues of . . . whether a waiver of *Miranda* rights is voluntary are issues of law reviewed *de novo*.  The determination of the historical facts is the proper domain of the trial court. . . . [F]requently the State and the petitioner offer conflicting testimony as to what the historical facts were.  Thus, even though the ultimate issue of voluntariness is a question of law, the state court's determination regarding factual issues are presumed

---

[82]     *Maryland v. Shatzer*, 599 U.S. 98, 104 (2010).

correct under 28 U.S.C. § 2254[e].[83]

At the pre-trial hearing, several witnesses testified that Conklin did not appear to be in an altered mental state.  Moreover, Worden testified that when he administered the *Miranda* warnings, he paused between each provision, looked at Conklin, and asked him if he understood.[84]  Conklin nodded his head up and down to indicate his understanding of each provision.[85]  After speaking with Conklin for a few minutes, Worden typed a statement and gave it to Conklin.[86]  Conklin took the statement and appeared to read each page.[87]  Worden then asked Conklin to read aloud the last two questions on the third page of the statement, and to write his responses and initial next to them.[88]  Worden testified that Conklin appeared coherent and healthy.[89]

Conklin presented two witnesses to testify to his altered mental state.

---

[83]     *Everett v. Barnett*, 162 F.3d 498, 500 (7th Cir. 1998) (citations omitted).

[84]     *See* Hearing Transcript at 35.

[85]     *See id.*

[86]     *See id.* at 37.

[87]     *See id.* at 38.

[88]     *See id.* at 39–40.

[89]     *See id.* at 50.

The first, Officer Conklin (no relation to defendant), testified that he checked a box on a form indicating that Conklin was apparently under the influence of alcohol or drugs.[90]  Officer Conklin stated that he checked the box because Conklin told him that he had taken prescribed OxyContin, but that Conklin appeared responsive, understood the questions he was asked, and did not have any impaired motor coordination or slurring of his speech.[91]  The second witness, Gina Barbusci, was the only witness to state that Conklin appeared to be in an altered mental state.  She testified that his pupils were constricted and did not respond normally to light, and that he was pale.[92]  She also testified that he seemed confused and disoriented because he appeared to be confused about how many pills he had taken that day.[93]

Based on this evidence, the trial court found that almost all evidence of the defendant's alleged intoxication was self-reported.  In reviewing Barbusci's testimony, the court concluded that the only empirical evidence of his intoxication was Conklin's constricted pupils, which Barbusci testified could have been normal for someone taking a prescribed course of OxyContin.  Weighing all of the

---

[90]     *See id.* at 71.

[91]     *See id.* at 71–73, 77.

[92]     *See id.* at 87–89.

[93]     *See id.* at 89.

testimony, the court concluded that Conklin voluntarily waived his rights, and therefore the statements were admissible.

This Court must presume that the trial court's factual determinations, based on credibility determinations, are correct. Based on the testimony of the witnesses, the trial court determined that Conklin was not in an altered mental state and waived his rights voluntarily. The evidence discussed above supports this determination. Thus, the Appellate Division's conclusion that the statements were voluntary is not contrary to or an unreasonable application of clearly established law.

Conklin's claim that his statements were not voluntary is therefore denied.

## V.   CONCLUSION

For the foregoing reasons, the Petition is denied. The remaining issue is whether to grant a certificate of appealability ("COA"). For a COA to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."[94] A "substantial showing" does not require a petitioner to show that he would prevail on the merits, but merely that reasonable jurists could disagree as to whether "the petition should have been resolved in a different manner or [whether]

---

[94]      28 U.S.C. § 2253(c)(2).

-23-

the issues presented were 'adequate to deserve encouragement to proceed further.'"[95]  Petitioner has made no showing.  Thus, I decline to grant a COA.  The Clerk of the Court is directed to close this Petition and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June 17, 2015

---

[95]      *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks and citation omitted)). *Accord Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

-24-

**- Appearances -**

**Petitioner (Pro Se):**

Joshua Conklin
c/o Michelle Cayo, Parole Officer
201 South James Street, Basement Level
Peekskill, NY 10566
(914) 734-4270


**For Respondent:**

Andrew R. Kass
Assistant District Attorney, Orange County
15 Matthews Street
Goshen, NY 10924
(845) 615-3640